**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE WILLIAMS COMPANIES,<br><br>    Plaintiff,<br><br>v.<br><br>EQT CORPORATION,<br><br>    Defendant. | Case No.: 25-cv-00304-SH |

**MOTION TO VACATE TEMPORARY**
**RESTRAINING ORDER, AND BRIEF IN SUPPORT**

Defendant EQT Corporation ("EQT"), a Pennsylvania corporation, moves this Court to immediately dissolve the Temporary Restraining Order ("TRO") that was entered improperly and without notice against EQT by the District Court of Tulsa County, on June 17, 2025. In support of this Motion, EQT state as follows:

The Williams Companies ("Williams") fabricated an emergency to obtain an *ex parte* TRO against EQT. Robert Wingo was employed at EQT through today and is a Texas resident who intends to begin employment with Williams in approximately four weeks' time. While EQT and Williams were in the process of discussing Wingo's contractual obligations to EQT, Williams rushed into its home court to obtain emergency relief, seeking to declare the contract between EQT and Wingo void, without notifying EQT. Ex. 1 at 1 (Declaration of William E. Jordan). In fact, the parties had been corresponding by phone and email just hours before the TRO was filed, and Williams never mentioned its intent to seek a TRO. This was no mistake: Williams, a stranger to the agreement between EQT and Wingo, filed in Oklahoma state court—without including Wingo—to avoid the forum selection clause in Wingo's contract. Without EQT present, the TRO was granted, restraining EQT from enforcing the non-solicitation and non-competition provisions

of its agreement with Wingo and ordering that Williams is "authorized to continue its contractual relationship with Wingo."

The TRO should be dissolved. First, it was wrongly issued because the Tulsa County court lacked personal jurisdiction over EQT—a corporation that lacks connection to Oklahoma. Second, even if the state court had personal jurisdiction, Williams cannot show it is entitled to a TRO. While Williams asked the state court to "preserve the status quo," the TRO does the opposite by interfering with the relationship between EQT and Wingo, who worked at EQT through today and is bound by contractual obligations to EQT after his employment with EQT ends. Because Wingo will not begin employment with Williams for several weeks, there is no immediate and irreparable harm prevented by the TRO. And even if Wingo were starting work at Williams tomorrow (he is not), nothing suggests that *Williams* would suffer irreparable harm if EQT's restrictive covenants are enforced—the only potential harm is to Wingo, a Texas resident, who is not a party to this lawsuit. For the same reasons, and others detailed herein, Williams is not likely to succeed on the merits. Williams's analysis of Oklahoma law is irrelevant where Oklahoma law does not apply to this dispute, a contractual matter between foreign parties who designated Pennsylvania as the law governing any dispute. Nor do the equities favor Williams, a stranger to the contract, who has no right to end run the forum selection clause and choice of law clause designating Pennsylvania as the governing law and proper forum for any dispute *between EQT and Wingo*. EQT therefore moves to dissolve the TRO—a request that the Court should grant given Williams's failure to sustain its burden showing its entitlement to this relief.

## BACKGROUND

In 2021, EQT hired Wingo. He initially served as Executive Vice President, Corporate Ventures but later enjoyed a promotion to Executive Vice President, Corporate Ventures and Midstream, one of the most senior executive roles at EQT and a position that contrary to

Williams's assertion, Dkt. No. 2, Ex. 2 at 6, Wingo served in through today. *Id.* at 15; Ex. 1 at 1. In Wingo's role, he was the executive point person leading both (i) EQT's plans to identify and develop new business ventures across the country and (ii) EQT's growth and development of a leading, multi-state midstream energy business. Dkt. No. 2, Ex. 2 at 15. Given the seniority of his position, Wingo also had access to virtually every strategic undertaking and future initiative at EQT. *Id.* at 17. He routinely developed and had access to EQT's most confidential and competitively sensitive information and participated in strategic meetings to act on this information on behalf of EQT and in competition with competitors such as Williams. *Id.*

Later in 2021, EQT offered Wingo the opportunity to participate in the EQT Corporation Executive Severance Plan ("Plan"). *Id.* at 20. The Plan offered Wingo certain employment assurances. For example, the Plan obligated EQT to pay Wingo significant remuneration if ever EQT terminated Wingo without cause. *Id.* at 25–27. It also obligated EQT to accelerate Wingo's vesting in certain long-term compensation and to provide him with benefits and significant cash payments, were he ever terminated following a change in EQT's corporate control. *Id.* at 27–28. In exchange for these significant benefits and assurances, the Plan required certain commitments from Wingo. These included non-competition, non-disclosure, and non-solicitation agreements (non-competition and non-solicitation agreements herein, "Restrictive Covenants"). *Id.* at 32–35. Wingo was advised of the terms of the Plan through a Participation Notice conveyed to him in October 2021. *Id.* at 20. Wingo signed and agreed to the Notice and entered into the contract that provided for his participation in the Plan on November 3, 2021. *Id.* at 21. The Plan contains a forum selection clause that requires all suits "relating to [or] arising out of" the Plan to be filed in Pennsylvania and to be governed by Pennsylvania law. *Id.* at 36.

On May 30, 2025, Wingo advised EQT of his resignation, which will be effective as of today. *Id.* at 15; Ex. 1 at 1. Wingo further advised EQT that he had accepted a position as an Executive Vice President within Williams's Corporate Strategic Development department. Dkt. No. 2, Ex. 2 at 15. In his new position, Wingo anticipates that he will help direct and oversee Williams's midstream businesses and will therefore have a role with the same scope, in the same business lines and in the same territories as his prior role at EQT. *Id.* at 16–17.

Shortly after providing his resignation notice, EQT informed Wingo of his obligations under the Plan. *Id.* at 17–18. In addition to numerous prior conversations with Wingo about his post-employment obligations and specifically his non-competition agreement, on June 11, 2025, EQT sent Wingo a letter to remind him of his various obligations to EQT and copied Williams. *Id.* at 15, 17–19. Based on conversations with Williams, EQT understands that Wingo has decided to breach his non-competition covenant and accept a position with Williams effective July 14, 2025. *Id.* at 18; Ex. 1 at 1.

On June 12, 2025, Williams sued EQT in the District Court for Tulsa County, even though Williams is not a party to the EQT-Wingo agreement, asserting that the Restrictive Covenants are unenforceable and requesting declaratory and injunctive relief. Dkt. No. 2, Ex. 1 at 7. Williams sought: (i) a declaration that the Restrictive Covenants "constitute unlawful restraints of trade or business, and of Wingo's right to exercise his profession, and unlawfully interfere with Williams' right to contract with others" and (ii) preliminary and permanent injunctions enjoining EQT from enforcing the Restrictive Covenants and permitting "Williams to continue to employ Wingo or any other former employee of [EQT] without any restriction." *Id.* at 5, 7.

EQT and Williams then attempted to negotiate a resolution of this matter. Because senior executives and lawyers from both companies were involved in these negotiations, Williams knew

4

exactly who at EQT was involved in this matter and how to reach them on short notice. That much is evident from the text messages Williams submitted to the state court showing negotiations with EQT. *See* Dkt. No. 2, Ex. 2 at 48. Yet without notice and before serving EQT with original service of process for this lawsuit, Williams moved on June 17, 2025, for an *ex parte* TRO and preliminary injunction "preventing [EQT] from enforcing" the Restrictive Covenants "to interfere with the contractual relations" between Williams and Wingo. *Id.* at 6, 13. In its draft order, Williams inaccurately stated that its counsel "attempted to contact counsel for Defendant to give notice of this proceeding" when in fact, Williams had made no such effort. Williams corrected this misrepresentation a day later, after it had already secured the TRO. *See id.* at 50, 52.[1] And even in its revised filings, Williams did not identify any efforts it made to provide notice to EQT before obtaining the TRO from the District Court for Tulsa County. *See id.* at 6–14; Fed. R. Civ. P. 65(b) (requiring such efforts); *see also* Okla. Stat. tit. 12, § 1384.1(B)(2) (similar to Fed. R. Civ. P. 65(b)(1)(B)). Williams's motion contains other inaccuracies that have yet to be corrected. For example, Williams claimed "Wingo voluntarily terminated his employment with [EQT] on May 30, 2025." Dkt. No. 2, Ex. 2 at 6. The truth is Wingo was still employed with EQT through today. Ex. 1 at 1.

Without warning or opportunity for EQT to be heard, the Oklahoma state court granted Williams's motion, citing conclusory language prepared by Williams that stated Williams had

---

[1] Text messages exchanged by the parties on July 17, 2025, screenshotted, and attached to Williams's motion for a TRO, *see* Dkt. No. 2, Ex. 2 at 48, have the screenshot timestamp of 12:54 PM, implying that Williams went to court sometime after 12:54 PM on July 17, 2025, to seek relief. The state court executed the original TRO not even thirty minutes later, at 1:22 PM, creating the strong inference that the original order was entirely draft language prepared by Williams, and that Williams prepared the false statement that notice had been given to EQT. *See* Dkt. No. 2, Ex. 2 at 49–50 (the original TRO, stating on page 49 that Williams had attempted notice to EQT, and stating on page 50 the order's July 17, 2025, 1:22 PM execution time).

satisfied the criteria for a TRO and that the Restrictive Covenants were "void as against Oklahoma public policy." Dkt. No. 2, Ex. 2 at 49. The court ordered that EQT was "immediately restrained and enjoined from enforcing" the Restrictive Covenants in "Oklahoma against Robert Wingo" and that Williams was "authorized to continue its contractual employment relationship" with Wingo "in Oklahoma without interference" by EQT. *Id.* at 50. The state court's original TRO accepted Williams's misrepresentation that it "has attempted to contact counsel for Defendant to give notice of this proceeding." *Id.* at 49.

Williams moved on July 18, 2025, to correct the false statement that notice to EQT of the TRO motion had been attempted. The revised TRO prepared by Williams replaced that false statement with the representation that Williams was "unaware of Defendant having legal counsel in Oklahoma," Dkt. No. 2, Ex. 2 at 58, as if that suffices for *ex parte* relief where the parties were in text-message communication, *see id.* at 48 (text messages contained within the state court record, dated the same afternoon as the issuance of the TRO), where Williams never asked if EQT had in-state counsel, and where any of EQT's counsel could have appeared remotely.

Before receiving any service in this case, EQT filed on June 17, 2025, a complaint against Wingo in the U.S. District Court for the Western District of Pennsylvania in Pittsburgh—the only locality under the Plan where disputes can be heard, Dkt. No. 2, Ex. 2 at 36–37—asserting that Wingo had breached the non-competition restriction in the Plan and was likely to breach the non-disclosure and non-solicitation restrictions under the Plan. *EQT Corp. v. Wingo*, No. 25-cv-832, Dkt. No. 1 at 1, 10 (W.D. Pa.). EQT requested declaratory relief "affirming the validity of the Plan and Wingo's non-disclosure, non-solicitation, and non-competition covenants" and preliminary and permanent injunctions restraining Wingo "from accepting employment with Williams for a

period of one-year following the effective date of his resignation from EQT" and from breaching the non-competition, non-solicitation, and non-disclosure provisions of the Plan. *Id.* at 11, 13, 14.

On June 18, 2025, EQT removed this case to this Court on the basis of federal diversity jurisdiction. Dkt. No. 2 at 2.

## ARGUMENT

I.   **OKLAHOMA LACKS PERSONAL JURISDICTION OVER EQT.**

The Court lacks both general and specific personal jurisdiction over EQT. As to general jurisdiction, EQT's "affiliations" with Oklahoma, to the extent any exist, are not "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). EQT is not incorporated in Oklahoma, is not registered to do business in Oklahoma, does not maintain its principal place of business here, and Williams provides no factual support for the proposition that EQT is "so heavily engaged in activity in [Oklahoma]" as to create general *in personam* jurisdiction. *Jin Young Kim v. JTA Custom Homes, Inc.*, 2018 WL 5779479, at *3 (W.D. Okla. Nov. 2, 2018) (concluding that the court lacked general jurisdiction over a company that was not incorporated in Oklahoma and that did not have a principal place of business in Oklahoma); Dkt. No. 2 at 3, Dkt. No. 2, Ex. 1 at 1–7; Dkt. No. 2, Ex. 2 at 6–13. The absence of an adequate showing by Williams requires the conclusion that the Court lacks general jurisdiction. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 900, 904 (10th Cir. 2017). In any event, Williams makes no showing because none is possible. Available public records indicate that EQT is a natural gas producer with operations in Pennsylvania, West Virginia, and Ohio, ***not*** Oklahoma. *See* Ex. 2 (EQT Corporation 2024 Form 10-K) at 11, 13, 14.[2]

---

[2] Williams is wrong to the extent that it asserts that the District Court for Tulsa County "implicitly" found that it had personal jurisdiction by issuing the TRO. *Ultra Premium Servs., LLC v. Tubnaya*

This Court also lacks specific personal jurisdiction over EQT. "Specific personal jurisdiction requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities.'" *Zon LED, LLC v. Power Partners, Inc.*, 2017 WL 4158663, at *3 (W.D. Okla. Sept. 19, 2017). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quotation omitted).

Here, the limited forum-related activity pleaded by Williams is insufficient to satisfy the purposeful direction requirement and falls well short of establishing any connection between Oklahoma and the controversy here in this case—a contractual matter between a Pennsylvania corporation and a Texas citizen. The only forum-related activity that Williams identifies in its petition or motion is its allegation that EQT sent a cease-and-desist letter to Wingo, ***copying*** Williams, in which EQT reserved "'its rights to proceed against Williams and its personnel who have participated in this conduct'" of encouraging Wingo's contractual violations. Dkt. No. 2, Ex. 1 at 4; Dkt. No. 2, Ex. 2 at 7, 19. But sending a cease-and-desist letter demanding compliance with a restrictive covenant to a Texas resident copying a future Oklahoma employer does not "create minimum contacts with [Oklahoma] sufficient to allow for the exercise of specific jurisdiction." *Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 451 (5th Cir. 2019). By sending this letter, EQT did not "purposely avail[] [it]self of the benefits and protections" of

---

*Metallurgicheskaya Kompaniya*, 2021 WL 2766398, at *2 (S.D. Tex. Feb. 10, 2021). "The TRO is . . . devoid of any factual or legal findings specific to personal jurisdiction. Therefore, the Court [should] find[] there is no evidence that the State Court actually addressed the issue of personal jurisdiction." *Id.*

Oklahoma, *id.* at 451—52, nor did EQT create any "substantial connection with the state of Oklahoma." *Jin Young Kim*, 2018 WL 5779479, at *5; *see also Walden v. Fiore*, 571 U.S. 277, 285–286 (2014) (explaining that "attenuated contacts" "ma[de] by interacting with other persons affiliated with the State" do not give a state specific jurisdiction over a defendant (quotation omitted)). Moreover, this suit does not arise out of EQT copying Williams on correspondence; rather it arises out of the Restrictive Covenants in the Plan agreed to by EQT, a Pennsylvania citizen, and Wingo, a Texas citizen. Dkt. No. 2, Ex. 1 at 1–7. Thus, "all the conduct giving rise to [Williams's] claims occurred elsewhere." *Bristol-Myers Squibb Co.*, 582 U.S. at 265. In sum, Williams "has failed to show a sufficient basis for the exercise of specific personal jurisdiction over [EQT] for this suit in Oklahoma." *Zon LED, LLC*, 2017 WL 4158663, at *5. The absence of personal jurisdiction requires that the TRO be vacated and ultimately requires dismissal of this action.

## II. THERE IS NO EMEGENCY JUSTIFYING A TEMPORARY RESTRAINING ORDER.

### A. The Applicable Legal Standards Establish a Heavy Burden Williams Does Not Carry.

Even if jurisdiction over EQT existed—it does not—the TRO fails the Fed. R. Civ. P. 65 standard and so must dissolve. Federal law governs the TRO after removal:

> When evaluating a motion to dissolve a temporary restraining order issued by a state court before removal, federal law is applied as though the action was originally commenced in federal court. Federal courts reviewing a TRO issued by a state court before removal have the authority to dissolve the TRO. Under Federal Rule of Civil Procedure 65(b)(4), the party against whom a temporary restraining order has issued may move to dissolve or modify the order, and the court must then promptly hear and decide the motion. In seeking continued injunctive relief, the plaintiff has the burden of showing a right to the relief.

*EPRO Servs., Inc. v. Regenesis Bioremediation Prods.*, 2019 WL 4054030, at *2 (D. Kan. Aug. 28, 2019) (cleaned up) (collecting cases); *see also Granny Goose Foods, Inc. v. Brotherhood of*

*Teamsters*, 415 U.S. 423, 441 (1974) (federal law governs after removal); 11A Wright & Miller, Fed. Prac. & Proc. § 2951 (3d ed.) (same); 28 U.S.C. § 1450 (indicating this Court may dissolve the state court order). The plaintiff is not entitled to any presumption of truth when seeking temporary relief. Rather, such "extraordinary remedies" require a showing that "the circumstances clearly demand" relief. *Asher v. Clay Cnty. Bd. of Educ.*, 585 F. Supp. 3d 947, 974 n.23 (E.D. Ky. 2022) (quotation omitted); *id.* (requiring "clear and convincing evidence") (quotation omitted); *see also* 11A Wright & Miller, Fed. Prac. & Proc. § 2949 (3d ed.) (collecting cases and indicating that if the parties' papers alone do not indicate that the party seeking temporary injunctive relief failed to carry its heavy burden, then this Court may take testimony at a hearing). Thus, Williams "bears the burden of justifying continued injunctive relief." *New York v. Trump*, 765 F. Supp. 3d 287, 291 (S.D.N.Y. 2025).

To decide if a TRO should dissolve under Federal Rule of Civil Procedure 65, this Court applies the same standards that control whether it ever should have issued "in the first place." *Paradise Distributors, Inc. v. Evansville Brewing Co., Inc.*, 906 F. Supp. 619, 624 n.6 (N.D. Okla. 1995). The "requirements for the issuance of a TRO are essentially the same as [for] a preliminary injunction." *Daugomah v. Roberts*, 2016 WL 4991693, at *1 (W.D. Okla. Sept. 16, 2016). Specifically, the party seeking restraint:

> must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.

*id.* Williams shows none of these elements.

### B. Williams Lacks Irreparable Injury.

Williams lacks irreparable injury for two reasons.

***First***, Wingo is not expected—even in the world where EQT dropped all objection to his

conduct—to become a Williams employee until July 14, 2025. Ex. 1 at 1. That is *nearly a month after* the date on which Williams inappropriately sought *ex parte* relief. Williams's motion for a TRO failed to inform the state court of these key facts. *Compare* Dkt. No. 2, Ex. 2 at 6 (claiming that "Wingo voluntarily terminated his employment with Defendant on May 30, 2025"), *with* Ex. 3 at 2 (EQT Corporation's Form 8-K, filed with the United States Securities & Exchange Commission, disclosing that "EQT and Mr. Wingo agreed his resignation would be effective as of June 20, 2025") *and with* Ex. 1 at 1 (Wingo will start with Williams on July 14, 2025).

Temporary restraining orders exist to "preserve the status quo and prevent irreparable harm." *Cassel v. Truss Commc'ns*, 2023 WL 6977624, at *1 (N.D. Okla. Oct. 23, 2023). Preservation of the status quo did not require the *ex parte* TRO where the parties had weeks to present argument in the ordinary course.

*Second*, even if Wingo were seeking to start at Williams today, that would not constitute irreparable harm *to Williams* either. Whether it would constitute irreparable harm to Wingo is neither true nor relevant, because *Williams* is the plaintiff and *Williams* is the party seeking "extraordinary" relief. *Asher*, 585 F. Supp. 3d at 974 n.23. Williams does not explain why it could not hire any one of America's tens of thousands of talented executives in Wingo's stead. Nor does Williams explain why any of its alleged inconveniences would not be compensable in damages. *See Paradise Distributors*, 906 F. Supp. at 623 ("If a monetary award could be adequate compensation, then Plaintiffs' injury is not irreparable as a matter of law.").

**C.      Williams Has Not Shown Likelihood of Success on the Merits.**

Williams fails to show likelihood of success on the merits, were this case actually litigated.[3]

---

[3] EQT does not waive and has not waived its objection to personal jurisdiction, nor any other Rule 12(b) defense, by contesting the TRO. *See Ultra Premium Servs., LLC*, 2021 WL 2766398, at *2 ("[A]n appearance at a hearing on an application for a temporary restraining order is not a general appearance that waives personal jurisdiction objections."). Because this case does not belong in

Williams pins its hopes on Oklahoma law, apparently conceding that EQT's agreement with Wingo is enforceable elsewhere. *See* Dkt. No. 2, Ex. 2 at 8–9. But Williams's TRO motion cites to Oklahoma law without explaining why Oklahoma would control where Oklahoma has nothing to do with the contract underlying this case. *Id.* at 9–11. Wingo is today a citizen of Texas, EQT a citizen of Pennsylvania, and the agreement between them specifies Pennsylvania forum and law, without regard to its conflicts of law principles. *See* Dkt. No. 2, Ex. 2 at 15 (Letter from W. Jordan to R. Wingo dated June 11, 2025, indicating Wingo resides at 208 Ivy Lane, San Antonio, Texas, 78209); Dkt. No. 2, Ex. 1 at 22 (detailing the agreement's forum selection, choice of law, and waiver of conflicts of laws language); Dkt. No. 2 at 4 (identifying EQT as a citizen of Pennsylvania).

Further, Plaintiff's TRO motion bases its likelihood-of-success on the merits analysis on the Plan's non-competition provision when that is not the only relevant portion of the contract. *See* Dkt. No. 2, Ex. 2 at 9–11. The contract also includes a forum selection clause, and Oklahoma's circumspect attitude toward non-compete agreements "will rarely defeat a transfer motion where there is a forum selection clause." *Parkinson v. Bos. Sci. Corp.*, 2018 WL 4328260, at *3 (N.D. Okla. July 31, 2018) (quotation omitted); *see also Cardoni v. Prosperity Bank*, 2014 WL 3369334, at *8 (N.D. Okla. July 9, 2014) (explaining that even where Oklahoma choice of law might disfavor non-compete agreements, that aspect of Oklahoma law "will not weigh heavily" when evaluating a forum selection clause). EQT can reasonably expect to enforce the Plan's forum selection clause and prevail in a more appropriate venue that actually has jurisdiction over all relevant parties.

Moreover, the law does not favor the strategic forum shopping analogous to Williams's

---

Oklahoma and because Oklahoma has no power over EQT, all discussion of Williams's likelihood of success on the merits remains hypothetical.

here when interpreting non-compete agreements. *See DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 418–419 (1st Cir. 2024) (rejecting an employee's strategic attempt to invoke California law to invalidate a noncompete following a move to work for a California company). Thus, Williams's analysis of why it would prevail on a noncompetition challenge under Oklahoma law has no bearing, as Oklahoma law will not apply to the dispute.

Separately, even if Williams could prevail on choice of law and escape the Plan's forum selection clause, it would still need to establish its own right to maintain its action against EQT where the parties lack privity. Williams could claim to be a third-party beneficiary of the EQT-Wingo agreement, *see* 15 OK ST § 29 (creating limited rights in such third parties), but Williams describes no facts creating such a relationship. EQT will defeat Williams's cause of action on the merits, were this case to reach them.

For the purposes of this Motion, the Court need not actually decide any of these issues. The TRO dissolves where Williams does not "clearly" show, *Asher*, 585 F. Supp. 3d at 974 n.23, its "likelihood" of success. *Daugomah*, 2016 WL 4991693, at *1.

### D. Williams Fails to Make a Showing on the Remaining Factors.

The remaining factors weigh against injunctive relief. Equities and public policy do not favor surreptitious *ex parte* escapades launched by plaintiffs over contracts to which they are not a party. The balance of harms tips in EQT's favor as the only harm to Williams from ordinary-course litigation is possible delay in hiring its preferred employee. EQT, meanwhile, faces the irreparable loss of trade secrets and confidential information should its senior executive in charge of its midstream business and operations depart for midstream-competitor Williams. *See* Dkt. No. 2, Ex. 2 at 15 (Letter from W. Jordan to R. Wingo dated June 11, 2025, describing Wingo's role). Public policy also cuts against Williams. The jurisdictions in which EQT and Wingo actually reside recognize the need to protect sensitive business information. *See Rugen v. Interactive Bus.*

*Sys. Inc.*, 864 S.W.2d 548, 551 (Tex. App. 1993); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 111 (3d. Cir. 2010) (noting that Pennsylvania courts recognize the "inevitable disclosure" doctrine protecting trade secrets). Oklahoma similarly values the protection of business information, as evidenced in Oklahoma's adoption of the Uniform Trade Secrets Act. *See* Okla. Stat. tit. 78 § 85 *et seq.*

## CONCLUSION

No Oklahoma court has jurisdiction to enter the TRO or anything similar against EQT. Even if an Oklahoma court did have jurisdiction, the circumstances here do not warrant a TRO. EQT respectfully requests that this Court dissolve the TRO. EQT further requests, should this Court not immediately find the TRO dissolvable, a prompt hearing. EQT reserves all rights and all Fed. R. Civ. P. 12(b) defenses.

Respectfully,

s/ Gideon A. Lincecum
Gideon A. Lincecum, OBA No. 19674
John R. (Jack) Bomhoff, OBA No. 32356
Mark D. Myers, OBA No. 34435
**STEPTOE & JOHNSON, PLLC**
Oklahoma Tower, 23rd Floor
210 Park Ave., Ste. 2300
Oklahoma City, Oklahoma 73102
Tele:  (405) 930-5151
Fax:   (405) 212-5843
gideon.lincecum@steptoe-johnson.com
jack.bomhoff@steptoe-johnson.com
mark.myers@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANT EQT CORPORATION**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

Steven A Broussard, Esq.
Keith A. Wilkes, Esq.
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
521 East 2nd St., Ste. 1200
Tulsa, OK 74120

          s/ Gideon A. Lincecum
          Gideon A. Lincecum, OBA No. 19674
          John R. (Jack) Bomhoff, OBA No. 32356
          Mark D. Myers, OBA No. 34435
          **STEPTOE & JOHNSON, PLLC**
          Oklahoma Tower, 23rd Floor
          210 Park Ave., Ste. 2300
          Oklahoma City, Oklahoma 73102
          Tele:  (405) 930-5151
          Fax:   (405) 212-5843
          gideon.lincecum@steptoe-johnson.com
          jack.bomhoff@steptoe-johnson.com
          mark.myers@steptoe-johnson.com

          **ATTORNEYS FOR DEFENDANT**
          **EQT CORPORATION**