IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **THE WILLIAMS COMPANIES,**<br><br>　　　　Plaintiff,<br><br>v.<br><br>**EQT CORPORATION,**<br><br>　　　　Defendant. | Case No. 25-CV-00304-SEH-SH |

## OPINION AND ORDER

Before the Court is Defendant EQT Corporation's ("EQT") motion to vacate a temporary restraining order issued by an Oklahoma state court. [ECF No. 7]. Also before the Court is Plaintiff The Williams Companies' ("Williams") motion for expedited order to extend the temporary restraining order. [ECF No. 13]. On July 1, 2025, the Court held a hearing on the motions. For the reasons set out below, the Court grants EQT's motion to vacate and denies Williams's motion to extend the temporary restraining order.

I.　　**Background and Procedural History**

Robert Wingo was an executive vice president of EQT when he was offered an executive vice president position at Williams. [ECF No. 7 at 2,4]. Wingo's employment with EQT was subject to a Corporate Executive Severance Plan

("Plan") that contains a noncompete provision restricting him from working for a direct competitor for one year after termination of his employment with EQT. [ECF No. 2-1 at 18–20]. The Plan further contains non-solicitation and non-disclosure provisions. [*Id.*]. Wingo signed a Participation Notice dated October 26, 2021, evidencing his agreement to the terms of the Plan. [ECF No. 2-2 at 20–21].

On May 30, 2025, Wingo gave EQT notice of his resignation and intent to work for Williams. [ECF No. 2-2 at 15]. About two weeks later, EQT sent Wingo a cease-and-desist letter threatening to sue him to enforce the restrictive covenants in the Plan, copying Williams. [*Id.* at 15–19].

On June 12, 2025, Williams sued EQT in the District Court of Tulsa County, Oklahoma, seeking declaratory and injunctive relief. [ECF No. 2-1]. Williams claims that EQT will tortiously interfere with its rights to employ Wingo, absent injunctive relief. [*Id.* at 6]. After Williams brought the state court action, the parties attempted to negotiate the covenants contained in the Plan, evidenced by an email to Williams's general counsel and relevant text messages. [ECF No. 16-2, 16-3, 16-4].

Four days after Williams sued EQT in Oklahoma, EQT filed a complaint against Wingo in the Western District of Pennsylvania, seeking a declaratory judgment and claiming breach and anticipatory breach of contract. *See EQT Corp. v. Wingo*, No. 25-cv-832, at ECF No. 1 (W.D. Pa. 2025).

The following day, Williams filed an ex parte motion for temporary restraining order ("TRO") and preliminary injunction. [ECF No. 2-2 at 6]. The state court judge granted the TRO and set a hearing on the motion for preliminary injunction. [*Id.* at 49]. The TRO was later amended to reflect that Williams's counsel was unaware of EQT having legal counsel in Oklahoma to appear and defend against the entry of a TRO. [*Id.* at 58].

EQT removed the state case to this Court and moves to vacate the TRO. [ECF No. 7]. EQT argues that the state court did not have jurisdiction to grant the TRO and, even if it did, Williams cannot show that it is entitled to a TRO. [*Id.* at 2]. Specifically, EQT argues that Williams will not suffer irreparable harm if EQT's restrictive covenants are enforced and Williams is not likely to succeed on the merits of its claims. [*Id.*].

Williams moves to extend the TRO until this Court can hold a hearing on its motion for preliminary injunction. [ECF No. 13]. Williams sought the TRO to prevent EQT from enforcing its non-compete and non-solicitation clauses with Wingo. [ECF No. 2-2 at 6]. Williams argues these provisions interfere with its contractual relationship with Wingo and are a violation of Oklahoma public policy. [*Id.*].

The Court ordered expedited briefing on the jurisdictional issue and set the TRO-related motions for hearing. EQT argues that the Court lacks personal jurisdiction over it because EQT is a foreign corporation not subject

to Oklahoma's general jurisdiction and the Court lacks specific jurisdiction because the conduct giving rise to the matter occurred elsewhere. [ECF No. 15 at 1]. At the hearing, EQT claimed that its cease-and-desist letter, email to Williams's general counsel, and relevant text messages were sent in response to affirmative acts taken by Williams and do not present sufficient minimum contacts required for specific jurisdiction. Williams argues that the letter, email, and text messages were "deliberately transmitted into Oklahoma to challenge an employment relationship formed and maintained within the state." [ECF No. 16 at 9].

According to a declaration from the Chief Legal and Policy Officer and Corporate Secretary of EQT, Wingo's employment ended with EQT on June 20, 2025 and his start date with Williams is July 14, 2025. [ECF No. 7-1]. At the hearing, the parties informed the Court that Wingo has moved to Oklahoma and has participated in onboarding activities with Williams.

## II. Analysis

### A. *This Court has personal jurisdiction over EQT.*

As the plaintiff, Williams has the burden of demonstrating personal jurisdiction over Defendant EQT. *Vora v. Dionne*, No. 23-1090, 2024 WL 509030, at *2 (10th Cir. Feb. 9, 2024). To do so, it must satisfy Oklahoma's long-arm statute and constitutional due process. *Breckenridge Consulting, LLC v. Tek For Your Life, LLC*, No. 23-248-JWB, 2024 WL 1481084, at *2

4

(N.D. Okla. March 26, 2024) (citation and internal quotations omitted). "The Oklahoma long-arm statute allows jurisdiction to the fullest extent permitted by constitutional due process, so courts can proceed straight to the constitutional issue." *Id.* (citing *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); *see also* Okla. Stat. tit. 12, § 2004(F)).

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (cleaned up). "The minimum contacts may give way to specific or general jurisdiction." *Just Between Friends Franchise Sys., Inc.*, 2023 WL 2496584, at *3 (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001)).

Unlike specific personal jurisdiction, general personal jurisdiction does not require that the litigation "arise from the defendant's activities in the forum." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012). Rather, general personal jurisdiction "requires that a defendant have contacts with the forum so continuous and systematic as to

render [it] essentially at home in the forum State." *Id*. (internal quotation mark and citation omitted). The parties do not argue, and the Court does not find, that it has general jurisdiction over EQT.

Rather, the issue is specific jurisdiction. "For specific jurisdiction, the defendant must have sufficient minimum contacts with the forum state, and jurisdiction over the defendant cannot offend 'traditional notions of fair play and substantial justice.'" *Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). To establish minimum contacts, a plaintiff must show two things. First, that the defendant "purposefully availed itself of the privilege of conducting activities within the forum state." *Id*. This requirement is also called the "purposeful direction" requirement. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904–05 (10th Cir. 2017) (citation omitted). Second, Plaintiff must also show that its injuries "arise out of the defendant's forum-related activities." *Id*. at 908.

Personal jurisdiction is a question of the quality of contacts just as much as it is the quantity, and a plaintiff must show that the defendants "have deliberately … engaged in significant activities within the forum State or deliberately directed [their] activities at the forum State, so that [they have] manifestly availed [themselves] of the privilege of conducting [activity] there." *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840–41 (10th Cir.

6

2020) (internal quotations and citations omitted). Under the "harmful effects" framework of purposeful availment, a plaintiff must show "(a) an intentional action ... , that was (b) expressly aimed at the forum state ... , with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)).

Here, Williams argues that EQT's communications through the cease-and-desist letter, email, and text messages were enough to establish personal jurisdiction, analogizing this case to *Dudnikov*. [ECF No. 16 at 9, n.6]. In *Dudnikov*, the Tenth Circuit held that a Colorado district court had personal jurisdiction over a defendant that did not conduct business in Colorado but acted "with the ultimate purpose of cancelling plaintiffs' [ebay] auction in Colorado." 514 F.3d at 1075. The Court finds *Dudnikov* persuasive. EQT purposefully directed its communications toward an Oklahoma company with the intent of enforcing its restrictive covenants. Williams's suit arises from these communications, and the Court finds no basis in traditional notions of fair play or substantial justice that would preclude suit in this forum. Therefore, this Court has personal jurisdiction over EQT.

    B. ***Williams has failed to show irreparable harm, as required for an extension of the TRO.***

All injunctions, including temporary restraining orders, issued by a state court "prior to … removal … remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. However, once an action is removed from state court, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974). Thus, "when evaluating a motion to dissolve a temporary restraining order issued by a state court before removal, federal law is applied as though the action was originally commenced in federal court." *EPRO Services, Inc. v. Regenesis Bioremediation Products*, 2019 WL 4054030, at *2 (D. Kan. Aug. 28, 2019) (citation and internal brackets removed).

Federal Rule of Civil Procedure 65(b)(4) provides that a party against whom a temporary restraining order has issued may move to dissolve or modify the order, and the court must promptly hear the motion. "In seeking continued injunctive relief, the plaintiff has the burden of showing a right to the relief." *EPRO Services, Inc.*, 2019 WL 4054030, at *2 (citing *Canal Auth. Of State of Fla. V. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("[a] preliminary injunction] is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites.")).

A party seeking a TRO must show "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Leacho, Inc. v. Consumer Product Safety Commission*, 103 F.4th 748, 752 (10th Cir. 2024) (internal quotation marks and citation omitted).

"A district court may find irreparable harm 'based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer.'" *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir.1990)). "Demonstrating irreparable harm is 'not an easy burden to fulfill.'" *DTC Energy Group, Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (quoting *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)). "The movant 'must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *Id.* (quoting *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016)).

Here, the Court finds that Williams has not carried its burden to show irreparable harm. At the hearing, Williams argued that any delay in filling its executive vice president vacancy will have deleterious effects upon the

company that defy easy calculation. The loss that Williams will suffer, it argues, goes beyond just the cost of hiring Wingo or the price of searching for a replacement. After all, the position that Wingo will fill is among the most important and senior positions within the company.

And yet, Wingo has not yet begun working for Williams, although he has moved to Oklahoma and has participated in onboarding activities within the company. Whatever contributions he might make, big or small, won't be made in advance of July 14th. Given this situation, it is difficult to see how Williams will suffer any harm if it is forced to wait for relief until the Court can rule on its motion for a preliminary injunction.

Williams's larger concern may be the litigation ongoing on the Western District of Pennsylvania between Wingo and EQT. In that case, EQT has requested that a temporary restraining order issue to enjoin Wingo from breaching the non-competition, non-solicitation, and non-disclosure provisions of the Plan. *EQT Corp.* No. 25-cv-832, at ECF No. 9 (W.D. Pa. 2025). Certainly, the potential exists that Wingo will be enjoined in the Pennsylvania case in a way that may complicate his employment with Williams.

However, Wingo is not a party to the action here, and the TRO entered in Tulsa County has not yet prevented EQT from moving forward with its claims in the Western District of Pennsylvania against Wingo. Without some

additional evidence that the extraordinary relief that a TRO provides would prevent a "certain, great, [and] actual" irreparable harm to Williams, the TRO must be vacated. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). A mere theoretical possibility of harm is simply not enough. Because Williams's request for extension of the TRO fails on the irreparable harm prong, the Court will not address the remaining required factors.

### III. Conclusion

After considering the evidence and arguments presented during the hearing and in the parties' filings, the Court finds that it has personal jurisdiction over EQT. However, the TRO should be vacated and not extended on the basis that Williams cannot show irreparable harm.

Therefore, the Court GRANTS EQT's motion to vacate the temporary restraining order [ECF No. 7] and DENIES Williams's motion to extend the temporary restraining order [ECF No. 13].

The Court further GRANTS Williams's motion to set preliminary injunction hearing [ECF No. 12]. A hearing on Plaintiff's Motion for Preliminary Injunction [ECF No. 2-2 at 6–48] is set for July 14, 2025 at 1:30 p.m.

DATED this 1st day of July 2025.

_Sara E. Hill_
Sara E. Hill
UNITED STATES DISTRICT JUDGE

11