IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE WILLIAMS COMPANIES, and ROBERT R. WINGO, <br><br> Plaintiffs, <br><br> v. <br><br> EQT CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) Case No. 25-cv-00304-SEH-SH ) ) ) ) ) |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, The Williams Companies ("Williams") and Robert R. Wingo ("Wingo"), pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, with their First Amended Complaint against Defendant EQT Corporation hereby allege and state as follows:

### PARTIES

1. Williams is a foreign corporation registered to conduct business in Oklahoma and has its principal place of business in Tulsa, Oklahoma.

2. Wingo is a Tulsa, Oklahoma resident who lives within the jurisdiction of the United States District Court for the Northern District of Oklahoma, and is employed by Williams at its corporate headquarters in Tulsa, Oklahoma.

3. EQT Corporation is a natural gas company with its principle place of business in Pittsburgh, Pennsylvania, and with offices for the majority of its executive team in Houston, Texas.

### RELEVANT PROCEDURAL HISTORY

4. On May 31, 2025, Williams sued Defendant in the District Court of Tulsa County, Oklahoma, seeking declaratory and injunctive relief. [ECF No. 2-1].

1

5. On June 17, 2025, the state court entered an *ex parte* Temporary Restraining Order ("TRO") and set a hearing on Williams' motion for preliminary injunction. [ECF No. 2-2 at 49]. The TRO was amended the next day to correct a scrivener's error. [*Id*. at 58]. The Amended TRO restrained and enjoined Defendant from enforcing its non-compete and non-solicitation provisions against Wingo, and authorized Williams to continue its contractual employment relationship with Wingo. [*Id*.].

6. On June 18, 2025, after the entry of the Amended TRO, Defendant removed the state case to this Court, moved to vacate the TRO, and challenged the Court's personal jurisdiction over Defendant. [ECF No. 7].

7. Later that day, Defendant violated the Amended TRO, which was still in effect in this Court and binding against Defendant, by filing a federal lawsuit against Wingo in the United States District Court for the Western District of Pennsylvania ("WDPA Action"), seeking to enforce its non-compete and non-solicitation provisions against Wingo.[1] When the WPDA Action was filed, Defendant had knowledge of the court order restraining and enjoining it from enforcing its restrictive covenants.

8. On June 27, 2025, Williams moved the Court to extend the Amended Temporary Restraining Order pursuant to FED. R. CIV. P. 65. [ECF No. 13].

9. On July 1, 2025, the Court held an expedited hearing on Defendant's challenge to personal jurisdiction and Williams' motion to extend the existing Amended Temporary Restraining Order. The Court subsequently issued an Opinion and Order finding that it has personal jurisdiction over Defendant in this action [ECF No. 18 at 4-7]; vacated and declined to

---

[1] *See EQT Corp. v. Wingo*, Case No., 2:25-cv-00832-RJC-CBB (W.D. Pa. 2025).

extend the TRO [*Id*. at 7-11]; and set the preliminary injunction hearing for June 14, 2025. [*Id*. at 11].

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332(a) and 1441. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (holding that the propriety of removal is judged . . . as it stands at the time of the removal.").

11. On July 1, 2025, this Court determined that it has personal jurisdiction over Defendant in the above-captioned matter. [ECF No. at 4-6]. In addition, the contacts with Oklahoma on which the Court found specific jurisdiction over Defendant, and other continuous and substantial contacts by Defendant with Williams in Oklahoma give rise to general jurisdiction over Defendant.

12. Venue is proper before this Court as this judicial district is the one in which a substantial part of the events or omissions giving rise to this action occurred. 28 U.S. Code § 1391(b)(2).

## GENERAL ALLEGATIONS

13. Plaintiffs incorporate by reference the preceding numbered Paragraphs 1-12 of their First Amended Complaint.

14. Wingo was employed by Defendant in Texas as an executive vice president when he was offered an executive vice president position at Williams. [ECF No. 7 at 2, 4].

15. On May 30, 2025, Mr. Wingo gave Defendant notice of his resignation of employment and intent to work for Williams. [ECF No. 2-2 at 15].

16. On June 11, 2025, Defendant sent a cease and desist letter to Wingo and Williams in which Defendant threatened to proceed against Wingo, Williams, and Williams' "personnel" to enforce the certain restrictive covenants in a Corporate Executive Severance Plan ("Plan"),

attached as Exhibit 1, and for allegedly "tortiously interfering with, aiding and abetting or conspiring to breach" Defendant's alleged rights under the Plan. Defendant further threatened to "initiate litigation proceedings against [Wingo], Williams, and others related to the matters described herein, including, among other things, emergency proceedings to obtain a temporary restraining order and injunction." *See* Cease and Desist Letter, p. 5, attached as Exhibit 2.

17. Section 9.1 of the Plan states: "**Neither the adoption nor the maintenance of the Plan shall be deemed to constitute a contract, implied or expressed [*sic*], between the Company [EQT] and any Participant [Wingo]**." [ECF No. 2-2 at 21] (Emphasis added).

18. The Plan was presented to Wingo years *after* his employment for Defendant began, and Wingo received no consideration under the Plan.

19. The Plan contains a noncompete provision purporting to prevent Wingo from working for a competitor for one year after the termination of his employment with Defendant. *See* Exhibit 1, p. 14, § 8.2.1, and ECF No. 2-1 at 18-20.

20. The Plan contains a non-solicitation clause which prohibits Wingo from "directly or indirectly" soliciting the business of any "customer" or "prospective customer" of Defendant. *Id.* at p. 15, § 8.2.3 and ECF No. 2-1 at 18-20.

21. The Plan further attempts to prevent Wingo from "directly or indirectly, expressly or tacitly" recruiting investors on behalf of an entity which engages in activities which are competitive with Defendant. Exhibit 1, p. 14, § 8.2.1(c).

22. The Plan contains a choice of law clause calling for it to be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Exhibit A, p. 17, § 9.6.

23. Pennsylvania law has adopted section 187 of the Restatement (Second) of Conflict of Laws, which recognizes that a choice-of-law provision will not be enforced where "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially

greater interest than the chosen state in the determination of the particular issue." *Gay v. CreditInform*, 511 F.3d 369, 389-90 (3d Cir. 2007) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187); *see also Stone St. Servs., Inc. v. Daniels*, No. Civ.A.00-1904, 2000 U.S. Dist. LEXIS 18904, 2000 WL 1909373, at *4 (E.D. Pa. Dec. 29, 2000) ("An express choice of law provision in a contract will be upheld so long as: . . . application of the chosen law does not violate a 'strong public policy' that would otherwise protect a party.").

24. The Tenth Circuit Court of Appeals holds that where subject matter jurisdiction is based on diversity of citizenship, as it is here, "federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause." *MidAmerica Constr. Mgmt Inc. v. MasTec North America, Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006).

25. In *Mid-America*, the Tenth Circuit further held that "[u]nder the law of the forum state, in this case, Oklahoma, a contract will be governed by the laws of the state where the contract was entered into *unless otherwise contrary to the law or public policy of the state where enforcement of the contract is sought*. **Thus, the Court must examine Oklahoma law pertaining to noncompete provisions**." *Id*. (italics emphasis in original) (bold emphasis added).[2]

26. Except in extremely limited circumstances expressly provided for in statute, and not present in this case, covenants not to compete violate Oklahoma's strong public policy as clearly expressed through legislative mandate and are, therefore, void and unenforceable. OKLA. STAT. tit. 15, §§ 217 and 219A. *See also* OKLA. CONST. Art. II, § 2 ("All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry").

27. The Oklahoma Supreme Court holds:

---

[2] The Plan also has a venue provision that purportedly provides that venue for any action related to the Plan must be in Pennsylvania state court or the United States District Court for the Western District of Pennsylvania. For similar reasons, the Plan's venue provision must be disregarded in favor of applying Oklahoma law to this dispute.

> [Okla. STAT. tit. 15,] § 219A is the Legislature's pronouncement on Oklahoma's public policy regarding covenants not to compete. It provides that where an employee has executed a covenant not to compete with an employer, the employee '**shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.**' The statute goes on to provide that any provision in a contract between an employer and an employee in conflict with the provisions of the section '**shall be void and unenforceable.**'

*Howard v. Nitro-Lift Techs., L.L.C.*, 2011 OK 98, ¶ 20, 273 P.3d 20, 26 (vacated on other grounds) (internal citations omitted) (emphasis in original). *See also Cardoni v. Prosperity Bank*, 805 F.3d 573, 581, 586 (5th Cir. 2015) (declining to apply choice of Texas law, and applying Oklahoma law to determine validity of noncompete provision, and holding that Oklahoma public policy forbids enforcement of noncompete provisions). *See generally Cardiovascular Surgical Specialists, Corp. v. Mammana*, 61 P.3d 210 (Okla. 2002); *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1171 (Okla. 1989); *Scanline Med., L.L.C. v. Brooks*, 259 P.3d 911 (Okla. Ct. App. 2011); and *Nitro-Lift*, at ¶ 29, 273 P.3d at 30 (holding that "the breadth of the delineation required to bring the non-competition agreements into conformance and the necessity of adding at least one material term to the contract prevents judicial modification.").

28. "[T]he question of whether a covenant not to compete or non-competition provision is contrary to [Oklahoma's] public policy is a question of law for the Court." *TruGreen Ltd. P'ship v. Okla. Landscape, Inc.*, 526 F. Supp. 3d 1080, 1086 (N.D. Okla. Mar. 17, 2021) (quoting *Oliver v. Omnicare, Inc.*, 103 P.3d 626, 628-629 (Okla. Ct. App. 2004)).

**COUNT I - DECLARATORY RELIEF**

29. Paragraphs 1-28 are incorporated as if set forth below.

30. Defendant purports to use the Plan to prohibit Williams from employing Wingo, and Wingo from working for Williams, for a period of one (1) year from his date of termination with

6

Defendant; to prevent Wingo from "indirectly or directly" soliciting or accepting business or prospective business from an overly broad definition of "customer" or "prospective customers" that violates the limitations of OKLA. STAT. tit. 15, § 219A; and to unlawfully impose a restraint of trade by preventing Wingo from "directly or indirectly, expressly or tacitly" recruiting investors on behalf of Williams.

31. Section 8.2.1 of the Plan violates Oklahoma's public policy regarding covenants not to compete because it purports to prevent Williams from employing Wingo, and Wingo from engaging in the same business as he conducted for Defendant, and is therefore void and unenforceable in Oklahoma. OKLA. STAT. tit. 15, § 219A.

32. Section 8.2.3 of the Plan violates Oklahoma public policy—and is therefore void and unenforceable as a matter of law—by exceeding the allowable post-employment restriction that prohibits the "**direct** solicitation of goods, services or a combination of goods and services from the **established customers** of the former employer." OKLA. STAT. tit. 15, § 219A.

33. Even assuming, arguendo, the Sections 8.2.1 and 8.2.3 of Plan are not declared void under OKLA. STAT. tit. 15, § 219A, those restrictive covenants would still be unenforceable because, among other reasons: (i) EQT purports to impose a nationwide restriction on Wingo's employment in violation of the "Restricted Territory" definition in the Plan, and constituting a patently unreasonable limitless geographical restriction; and (ii) EQT did not provide adequate consideration for the restrictive covenants.

34. Section 8.2.3 of the Plan is not subject to judicial modification because the breadth of the delineation required to bring it into conformance, and the necessity of adding at least one material term, prevents judicial modification. *Nitro-Lift*, at ¶ 29, 273 P.3d at 30.

35. A dispute has arisen between Williams and Defendant, and Wingo and Defendant, regarding the validity and enforceability of the non-compete and non-solicitations provisions of the Plan, and the interference by Defendant with Williams and Wingo's contractual relations.

36. This Court has the authority to declare the contractual rights and duties under Sections 8.2.1 and 8.2.3.

37. Williams seeks a declaration that: (i) Oklahoma law applies to this action; (ii) venue is proper in this Court; and (ii) Sections 8.2.1 and 8.2.3 of the Plan constitute unlawful restraints of trade or business, prohibit Wingo's right to exercise his profession, and unlawfully interfere with Williams' and Wingo's right to contract with others, and are therefore void and unenforceable.

## COUNT II – TORTIOUS INTEREFERENCE WITH CONTRACTUAL RELATIONS

38. The above Paragraphs 1-37 are incorporated as if fully set forth below.

39. Defendant has intentionally and improperly interfered with the performance of a contract between Williams and Wingo, by attempting to prevent both Williams and Wingo from performing the contract, and by causing the performance to be more expensive or burdensome.

40. Plaintiffs have suffered damages as a direct result of Defendant's actions.

41. Monetary damages are insufficient to address the harm because it the harm is both ongoing and irreparable. As such, Plaintiffs are entitled to injunctive relief.

## COUNT III – INJUNCTIVE RELIEF

42. The above Paragraphs 1-41 are incorporated as if fully set forth below.

43. Plaintiffs are entitled to a preliminary and permanent injunction against Defendant.

44. Defendant is statutorily prohibited from enforcing its illegal restraint of trade and interference with Plaintiffs' contractual rights. However, Defendant's actions make clear that it will continue seeking to

enforce its illegal restrictive covenants and to interfere with Plaintiffs' contractual relations, which will cause irreparable harm. Defendant must be enjoined to prevent irreparable harm.

44. Absent injunctive relief, Plaintiffs will have their contractual rights tortiously interfered with by Defendant, causing a disruption in Williams' legitimate business operations and leaving Wingo effectively unemployed.

45. The impact to Defendant would be nominal if it were enjoined from enforcing its illegal restraint on trade. The laws of Oklahoma protect the rights of it citizens to move between competitors in an industry; protect Williams' right to employ individuals without tortious interference; and further protect against the illegitimate use of the legal process to directly violate and offend the strong public policy of Oklahoma.

46. The public interest plainly favors the injunctive relief requested. Oklahoma public policy precludes non-competition and non-solicitation agreements like those at issue here, and holds void all restraints of trade except for very limited exceptions that do not apply in this matter. Williams and Wingo deserve the protections of Oklahoma law and the power of this Court to enforce the statutorily mandated policy of Oklahoma.

47. For the foregoing reasons, Plaintiffs request the Court enter a preliminary injunction and permanent injunction as follows:

   a. Enjoining Defendant from attempting to enforce its illegal non-competition and non-solicitation restrictions against Wingo.

   b. Permitting Williams to continue to employ Wingo without any restriction set forth in Sections 8.2.1 and 8.2.3 of the Plan.

**WHEREFORE**, Plaintiffs' pray for judgment declaring the provisions of Section 8.2.1 and 8.2.3 of the Plan as void and unenforceable; pray that the Court preliminarily and permanently enjoin Defendant from enforcing its illegal restrictive covenants in Oklahoma; and further pray for

the recovery of their reasonable attorney's fees and court costs, together with such other and further relief as the Court may deem proper under the circumstances.

Filed July 14, 2025

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

/s/ *Keith A. Wilkes*
Steven A. Broussard, OBA 12582
Keith A. Wilkes, OBA 16750
521 East 2nd Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
sbroussard@hallesetill.com
kwilkes@hallestill.com

Paul DeMuro, OBA 17605
**FREDERIC DORWART, LAWYERS PLLC**
Old City Hall
124 East 4th Street
Tulsa, Oklahoma 74103
T: (918) 583-9922
pdemuro@fdlaw.com

**ATTORNEYS FOR THE WILLIAMS COMPANIES**

-And-

Samuel R. Fulkerson, OBA 14370
**OGLETREE, DEAKINS, NASH, SMOAK & STEWARD, P.C.**
The Heritage Building
621 N. Robinson, Suite 400
Oklahoma City, OK 73102
Telephone: 405.546.3751
Facsimile: 405.546.3775
sam.fulkerson@ogletree.com

**ATTORNEYS FOR ROBERT R. WINGO**

## CERTIFICATE OF SERVICE

    I hereby certify that on July 14, 2025, I electronically transmitted this document to all parties receiving notice under the Court's ECF System.

                              s/ *Keith A. Wilkes*
                              Keith A. Wilkes