# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

THE WILLIAMS COMPANIES, and
ROBERT R. WINGO,

    Plaintiffs,

v.

EQT CORPORATION,

    Defendant.

Case No.: 25-cv-00304-SEH-SH

## DEFENDANT EQT CORPORATION'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Gideon A. Lincecum, OBA No. 19674
John R. (Jack) Bomhoff, OBA No. 32356
Mark D. Myers, OBA No. 34435
**STEPTOE & JOHNSON, PLLC**
Oklahoma Tower, 23rd Floor
210 Park Ave., Ste. 2300
Oklahoma City, Oklahoma 73102
Tele:  (405) 930-5151
Fax:   (405) 212-5843
gideon.lincecum@steptoe-johnson.com
jack.bomhoff@steptoe-johnson.com
mark.myers@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANT
EQT CORPORATION**

Williams' continued efforts to usurp the parties' agreement and bargained for rights by dragging EQT into a forum that was never agreed to on claims that have no merit must be stopped. This case should be dismissed because venue is improper here. It should be dismissed because Plaintiffs failed to plead a viable tortious interference count or any other cause of action. And it should be dismissed because Oklahoma lacks personal jurisdiction over EQT Corporation.

Plaintiffs' Response in Opposition to EQT's Motion to Dismiss ("Plaintiffs' Opposition") (Dkt. 50) struggles to mount any serious defense to any of these propositions and is striking in what it concedes. Plaintiffs spend not even 150 words defending Oklahoma's jurisdiction. This failure alone justifies promptly terminating these proceedings. Plaintiffs similarly offer a bare page in defense of venue. On a core merits question—whether they stated a claim for tortious interference—Plaintiffs entirely fail to plead damages and provide paper-thin treatment to nearly everything else. Plaintiffs' concessions on these necessary elements are determinative.

Rather than defend jurisdiction or the merits of their claims, Plaintiffs instead allocate nearly their entire brief to issues already fully briefed in EQT's Motion to Stay (Dkt. 30) and Motion to Transfer (Dkt. 41). Plaintiffs' arguments on issues related to those Motions, including abstention and forum selection, fail to address the key shortcomings of their complaint. Worse, Plaintiffs restated positions—for example, the position that state law or policy controls a forum selection clause—have been rejected verbatim by the Supreme Court. Meanwhile, Plaintiffs offer no answer on dispositive issues of this litigation. EQT respectfully requests that the Motion to Dismiss be granted.

## I. THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE.

Venue in the Northern District of Oklahoma is improper under 28 U.S.C. § 1391(b). Plaintiff does not dispute that EQT is not a resident of Oklahoma, and therefore § 1391(b)(1) does not provide any basis for venue in this district. Mot. at 4; Opp'n at 3–4. Nor does Section

1

1391(b)(2) because no substantial part of the events or omissions giving rise to any of Plaintiffs' claims occurred in Oklahoma. Mot. at 4–6. As to the declaratory judgment claim, that concerns the enforceability of the Plan's Restrictive Covenants; the Plan was negotiated and executed outside of Oklahoma by Pennsylvania and Texas citizens and the Restrictive Covenants arise from a contractual relationship formed outside of Oklahoma and protect a Pennsylvania corporation's trade secrets and business assets. Dkt. 2-2 at 15–21. And concerning the tortious interference claim, EQT sought to enforce its rights under a Pennsylvania agreement against a then-Texas resident by sending him a cease-and-desist letter and filing suit in Pennsylvania while he was a resident of Texas. *Id.* at 15. In short, none of these events took place in Oklahoma.

Wingo's current post-contractual move to Oklahoma is insufficient to establish venue under § 1391(b)(2). *See Morgan v. Christensen*, 2012 WL 1802021, at *1 (D. Colo. May 17, 2012). Plaintiffs wrongly insist otherwise and assert that venue is proper because EQT's cease-and-desist letter copied Williams, "an Oklahoma entity," and EQT sent emails and text messages challenging Williams' hiring of Wingo. Opp'n at 3–4. But Plaintiffs fail to cite any authority that the mere receipt of a cease-and-desist letter or related correspondence in Oklahoma can make venue proper under § 1391(b)(2). *Id.* Courts have repeatedly held that such incidental contacts are insufficient to establish venue. *See, e.g.*, *Transp. Funding, LLC v. HVH Transp., Inc.*, 2017 WL 4223126, *4 (D. Kan. Sept. 22, 2017). Plaintiffs offer no response to this argument because none exists.

II.     **PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF.**

    A.     **Plaintiffs Fail To Plead A Claim For Tortious Interference With Contractual Relations.**

Williams' claim that EQT has tortiously interfered by seeking to enforce its contractual rights regarding its own former employee is backwards on the facts and wrong on the law. Plaintiffs fail to plead the required elements for a tortious interference claim: (1) the existence of

2

a contract; (2) malicious and wrongful interference; (3) interference that is "unjustified, unprivileged, or inexcusable"; and (4) "damage proximately caused by the interference." *Goff v. Hukill*, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010). As to (3), Plaintiffs do not plead that EQT's conduct was unjustified, unprivileged, or inexcusable because litigating to enforce its contractual rights as to its former employee is not illegal or improper and was aimed to protect its legitimate economic interests. Am. Compl. ¶¶ 1–41; Mot. at 12–13. This failure is fatal to their claim. *Morrow Dev. Corp. v. Am. Bank & Tr. Co*, 875 P.2d 411, 416–17 (Okla. 1994). Nor do Plaintiffs plead more than conclusory allegations of damages caused by the alleged interference— that too disposes of this claim. Am. Compl. ¶¶ 1–41; Mot. 14; Opp'n at 22–24. Indeed, Plaintiffs do not and cannot allege that EQT's conduct caused either a breach of contract or damages because, as Plaintiffs concede, Wingo has started working for Williams. Am. Comp. ¶ 2; *UMB Bank N.A. v. Asbury Communities, Inc.,* 2021 WL 4712634, at *5 (N.D. Okla. Oct. 8, 2021) ("Oklahoma jurisprudence makes clear that in order to recover for tortious interference with contract, the plaintiff must establish the alleged interference produced the breach of the contract."). These shortcomings are beyond dispute and independently require that Plaintiffs' tortious interference claim be dismissed.

Nor do Plaintiffs plead that EQT's conduct was malicious or wrongful as required. *See Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics & Dangerous Drugs*, 99 P.3d 1209, 1218 (Okla. Civ. App. 2004); Am. Compl. ¶¶ 1–41. Malice in this context is defined as "an unreasonable and wrongful act done intentionally, without just cause or excuse." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009). Plaintiffs recognize that malice is a required element of their claim and point to EQT's cease-and-desist letter and lawsuit as depriving them of their "enterprise." Opp'n at 23–24. They nevertheless fail to contest, let alone with legal

3

authority, EQT's case law that enforcing its own contractual rights does not and cannot constitute malicious or wrongful interference as a matter of law, further warranting this claim's dismissal. *Id.*; Mot. at 12.

### B. Plaintiffs Lack A Cause Of Action For Claims For Declaratory And Injunctive Relief.

Plaintiffs' counts for declaratory and injunctive relief are not independent causes of action and cannot stand in the absence of a viable underlying claim. Rather, a declaratory judgment and injunctive relief are remedies, not standalone claims. Mot. at 14–15. Because Plaintiffs have failed to state a claim for tortious interference, their requests for declaratory and injunctive relief necessarily fail. *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *19 (S.D.N.Y. Sept. 25, 2024) ("These 'claims,' however, are requests for relief improperly pleaded as causes of actions and should be dismissed."). Because Plaintiffs fail to offer any authority to the contrary, their claims for both declaratory and injunctive relief should be dismissed. Opp'n at 24–25.

### C. Even If Williams Had A Claim For Injunctive Relief Or Declaratory Relief, Those Claims Would Be Governed By Pennsylvania Law.

Even if Plaintiffs could state a claim for declaratory or injunctive relief (they cannot), those claims would be governed by Pennsylvania law, not Oklahoma law. The Plan contains a clear and unambiguous choice-of-law provision requiring application of Pennsylvania law "without giving effect to its conflicts of law principles." Dkt. 2-2 at 36. This provision is enforceable under Section 187(2) of the Restatement (Second) of Conflict of Laws, adopted by both Pennsylvania and Oklahoma, because the parties chose Pennsylvania law to govern their agreement and no exception to the rule enforcing the parties' agreement applies. Mot. at 15–17. In addition, the Restrictive Covenants are enforceable under Pennsylvania law because (1) they are "incident to an employment relation between the parties to the covenant," (2) the restrictions are "reasonably

4

necessary for the protection of the employer," and (3) the restrictions are "reasonably limited in duration and geographic extent." *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 476 (E.D. Pa. 2007); *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007); Mot. at 18–20.

In response, Plaintiffs agree that Restatement (Second) of Conflict of Laws § 187(2) applies but do not engage with its requirements. Opp'n at 4–6. Instead, Plaintiffs quote the language of § 187(2) and then cite cases that do not apply it. *Id.* (quoting *MidAmerica Constr. Mgmt. Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257 (10th Cir. 2006) and *TruGreen Ltd. P'ship v. Okla. Landscape, Inc.*, 526 F. Supp. 3d 1080, 1092 (N.D. Okla. 2021)); Mot. at 17. Plaintiffs' choice-of-law analysis is further flawed because Plaintiffs do not evaluate § 187's requirements for applying law distinct from the parties' choice: Plaintiffs do not respond to EQT's argument and supporting case law that Pennsylvania has a "substantial relationship to the parties"—a showing Plaintiffs must successfully counter for Oklahoma law to apply—nor do Plaintiffs evaluate Pennsylvania's interest in enforcing the Restrictive Covenants, another threshold requirement for this choice-of-law analysis. Opp'n at 4–6; Mot. at 15–16. These failures doom Plaintiffs' choice-of-law analysis because the "Court cannot do [Plaintiffs'] work for them." *Friedlander v. Cook*, 2008 WL 4830810, at *17 (D. N.M. Aug. 12, 2008). Because Plaintiffs have not met their burden to displace the parties' choice-of-law decision, Pennsylvania law governs.

Plaintiffs next recycle arguments challenging the enforceability of the Restrictive Covenants. Opp'n at 11–13. EQT has briefed why they are supported by consideration (the contingent consideration here is not illusory) and the Participation Notice incorporating the Plan constitutes a binding contract. Mot. at 20; Dkt. 51 at 7–8. EQT incorporates those arguments here.

Plaintiffs' arguments regarding the forum selection clause similarly miss the mark. They devote an inordinate amount of their brief to the Plan's forum selection clause—far more than

almost any other issue. Opp'n at 8–15. But the forum selection clause is not directly at issue in EQT's Motion, which seeks dismissal for failure to state a claim, lack of personal jurisdiction, and improper venue.[1] The fact that Plaintiffs spend seven pages on the forum selection clause, while dedicating only a page and a half to whether they have pleaded any claims, highlights the weakness of their claims. Moreover, Plaintiffs expend more than sixteen times as many words on the forum selection clause as they do on their personal jurisdiction argument, which is **Plaintiffs' burden to establish**. This disproportionate focus underscores that Plaintiffs lack any meritorious arguments on the issues actually before the Court.

### III.   PLAINTIFFS' DECLARATORY COUNT SHOULD BE DISMISSED.

This Court should abstain from considering Plaintiffs' declaratory judgment count for the reasons described in *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994). EQT originally presented its *Mhoon* argument in its Motion to Stay (Dkt. 30) and associated Reply (Dkt. 48). EQT reiterated its argument in this Motion to Dismiss because a discretionary decision to abstain under *Mhoon* supports merits dismissal in lieu of stay. *See, e.g.*, *Creative Acres, Inc. v. Colorado Farm Bureau Ins. Co.*, 2024 WL 4696102, at *5–6 (D. Colo. Nov. 6, 2024).

Plaintiffs' opposition to abstention largely recycles the same positions EQT already rebutted, and EQT stands on prior briefing. Still, a few features of Plaintiffs' Opposition merit special attention. Regarding the *first Mhoon* factor, which asks whether the instant case will settle the controversy, Plaintiffs repeat the false claim that the Pennsylvania court "stayed" the Pennsylvania litigation. Opp'n at 14. EQT already explained why that is not true. *See* Dkt. 48 at 2–4 (explaining that a minute order addressing hearing scheduling is not a stay and noting that

---

[1] As explained in EQT's Motion to Transfer, the forum selection clause binds Williams as a closely related party and is enforceable against Wingo because the Participation Notice incorporating the Plan is enforceable and supported by consideration. Dkt. 41 at 9–14.

6

Wingo later filed a motion to stay). Plaintiffs otherwise have no answer to the obvious: Multi-state and multi-circuit litigation will not likely be settled by this Court alone. Abstention under *Mhoon* would dramatically simplify this litigation. *Mhoon*'s first factor favors abstention.

As does the ***second*** *Mhoon* factor, which considers whether the suit will clarify the legal relations of the parties. Plaintiffs' suggestion that the second factor follows the first matters little where first factor favors abstention. Plaintiffs' assertion that "[t]his action will undoubtedly settle the legal relations" at issue, *see* Opp'n at 15, is belied by the presence of the Pennsylvania suit and looming activity in two Courts of Appeals, either of which may soon opine on this case because requests for injunctive relief allow interlocutory appeal. *See* 28 U.S.C. § 1291.

Regarding the ***third*** factor, which considers "procedural fencing" and the "race to *res judicata*," *Mhoon*, 31 F.3d at 983, Plaintiffs offer only an inapposite, six-page discussion of the first-filed rule. *See* Opp'n at 15–20. EQT has already explained at length why the first-filed rule does not apply. *See* Dkt. 30 at 13–14; Dkt. 41 at 15–16; Dkt. 48 at 3–6. Plaintiffs' citations to stringent, out-of-circuit interpretations of the anticipatory filing exception do not bind this Court. And Plaintiffs' digressions into the facts of *other cases* that found no anticipatory filing do not speak to *this case*, where a lawsuit filed "in the face of threatened litigation indicates" that Plaintiffs brought suit "in an effort to win a race to the courthouse and to litigate in [their] chosen forum." *Black Card, LLC v. Am. Express Mktg. & Dev. Corp.*, 2010 WL 11561714, at *4–6 (D. Wyo. Nov. 5, 2010) (applying Tenth Circuit precedent to describe an anticipatory lawsuit). Plaintiffs ***already pleaded that they filed this suit anticipating EQT's Pennsylvania suit***, and no amount of inapposite citation can take that fact away. *See* Dkt. 2-1 at ¶ 14 (Williams' original complaint complaining of EQT's "threats" of litigation); *id.* ¶ 24 (stating that it was "clear" that EQT would enforce its rights); Dkt. 36 at ¶ 16 (amended complaint again complaining of EQT's

7

alleged litigation threats).

Further, Plaintiffs focus on the first-filed rule leads them to miss the import of *Mhoon*'s third factor. The third factor does not ask whether the first-filed rule applies. It asks whether Plaintiffs *either* "procedural[ly] fence[d]" *or* "race[d] to *res judicata*." *Mhoon*, 31 F.3d at 983. Plaintiffs do not, for example, deny that that the *ex-parte* state court TRO that they improperly sought without notice—when notice was a text message away—was "procedural fencing" or that they hope to win a race to *res judicata*.

Plaintiffs also ignore EQT's argument regarding the ***fourth*** *Mhoon* factor. EQT concedes that no parallel state court action is pending here, but a parallel federal court action is. The law favors abstention where "the same fact-dependent issues are likely to be decided in another pending proceeding." *M-D Bldg. Prods., Inc. v. Associated Crafts/Willet Hauser Architect. Glass, Inc.*, 2021 WL 12319682, at *6 (W.D. Okla. Mar. 30, 2021). Plaintiffs ask this Court to robotically apply the literal text of the fourth factor as written in *Mhoon*. But "[t]his is a practical decision, which may turn on any number of nuances." *Farm Bureau Prop. & Cas. Ins. Co. v. OE Trucking*, 2023 WL 1861411, at *4 (D. N.M. Feb. 9, 2023). Broadly understood, the factor favors abstention.

The ***fifth*** *Mhoon* factor, which asks "whether there is an alternative remedy which is better or more effective," 31 F.3d at 983, also favors abstention. EQT has repeatedly explained that Pennsylvania can fairly and more efficiently hear this case and that Williams, with billions in operations and investment in Pennsylvania, cannot complain of litigating there. Rather than rebut these facts, Plaintiffs recycle their well-worn reliance on the first-filed rule. They do so even though the Pennsylvania suit was the first to join Wingo, the first to present any substantive claim (versus the deficient, stand-alone declaratory judgment count originally pleaded here), and even though EQT has elsewhere addressed at length why the anticipatory nature of Plaintiffs' suit

8

mitigates their first-filed attack. Plaintiffs' citation of more out-of-circuit cases dating back to the 1960s with inapposite facts does not change this calculus. Moreover, Plaintiffs' assertion that the Pennsylvania court has stayed its case is demonstrably false. Opp'n at 22. The fifth factor, like all of the others, favors abstention.

Unless the Court stays or transfers this case, the Court should dismiss it. The presence of a tortious interference count does not save the case from dismissal or stay under *Mhoon*. *See Sutton v. Everest Nat. Ins. Co.*, 2007 WL 2438987, at *3 (D. Colo. Aug. 23, 2007).

## IV. OKLAHOMA LACKS PERSONAL JURISDICTION OVER EQT.

EQT has contested Oklahoma's jurisdiction at every step of this proceeding to-date. Dkt. 7 at 7–9; Dkt. 35 at 22–26; Dkt. 43 at 23–27; Dkt. 46 at 23–27. Plaintiffs have declined to rebut EQT's arguments. *See* Dkt. 35 at ¶ 11; Dkt. 49; Dkt. 50 at 4. Their serial forfeitures should end this case. *See Old Republic Ins. Co. v. Cont'l Motors*, 877 F.3d 895, 914 n.29 (10th Cir. 2017).

When the Court last addressed jurisdiction on July 1, 2025, it did not, *contra* Plaintiffs, have the benefit of "full briefing." Opp'n at 2. It had the benefit of short, simultaneously filed briefs. *See* Dkt. Nos. 14–16. Williams raised *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), for the first time in its brief, Dkt. 16 at 8, and the Court accepted Plaintiffs' representations for the purposes of resolving the emergency motion.

EQT has since extensively briefed the inapplicability of *Dudnikov* at every opportunity— and received only Plaintiffs' silence. *Dudnikov* does not present the same fact pattern because none of EQT's actions threatened to destroy Williams' multi-billion-dollar business. EQT never purposefully availed itself of Oklahoma as required for specific jurisdiction. As mentioned in prior briefing, the Tenth Circuit **rejected the exact argument Plaintiffs made in July**—that alleged tortious interference evidenced by cease-and-desist letters alone suffices for personal jurisdiction. *See Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). The Supreme Court requires

9

"purposeful availment" of the forum state's laws, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011), and EQT has only ever sought to avail itself of Pennsylvania's laws. EQT has also pointed to the Tenth Circuit's own limiting of *Dudnikov* in *C5 Med. Werks, LLC v. CeramTec GMBH*, which found "*Dudnikov* is distinguishable" and that a cease-and-desist letter was "insufficient to confer jurisdiction in a declaratory judgment action." 937 F.3d 1319, 1324–25 (10th Cir. 2019). EQT also raised the wide body of federal law rejecting the proposition that a cease-and-desist letters or prelitigation correspondence (the only alleged contacts here) suffice for jurisdiction. *See* Dkt. 35 at 24–25; Dkt. 43 at 25–26; Dkt. 46 at 25–26. Plaintiffs responded to none of these arguments. EQT has also placed in issue something that was not in issue at the July 1 hearing: whether exercising jurisdiction comports with fair play and substantial justice. Mot. at 24–25. Plaintiffs have never responded to that, either.

Plaintiffs' only rejoinder is an incorrect contortion of the "law of the case" doctrine. Opp'n at 3. Plaintiffs are wrong. The Tenth Circuit defines the "law of the case" as "a doctrine under which an *appellate court* will not reconsider a matter resolved on a *prior appeal*." *Hale v. Gibson*, 227 F.3d 1298, 1328 n.13 (10th Cir. 2000) (emphasis added). No appellate court has created any law of this case. Rather, "[i]t is within the District Judge's discretion to revise" her position "prior to entry of final judgment." *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988); *see also Atkinson v. Ortiz*, 2009 WL 3161960, at *5 (D. Colo. Sept. 29, 2009) (similar); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). EQT respectfully asks that the Court revisit Oklahoma's jurisdiction because Oklahoma has none.

## CONCLUSION

EQT respectfully requests that the Motion be granted.

Respectfully,

s/ Gideon A. Lincecum
Gideon A. Lincecum, OBA No. 19674
John R. (Jack) Bomhoff, OBA No. 32356
Mark D. Myers, OBA No. 34435
**STEPTOE & JOHNSON, PLLC**
Oklahoma Tower, 23rd Floor
210 Park Ave., Ste. 2300
Oklahoma City, Oklahoma 73102
Tele:  (405) 930-5151
Fax:   (405) 212-5843
gideon.lincecum@steptoe-johnson.com
jack.bomhoff@steptoe-johnson.com
mark.myers@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANT EQT CORPORATION**

# CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Steven A Broussard, Esq.
Keith A. Wilkes, Esq.
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
521 E. 2nd St., Ste. 1200
Tulsa, OK 74120

Paul DeMuro
**FREDERIC DORWART, LAWYERS PLLC**
124 E. 4th St.,
Tulsa, OK 74103

Samuel R. Fulkerson
**OGLETREE, DEAKINS, NASH, SOMAK, & STEWARD, P.C.**
The Heritage Building
621 N. Robinson, Ste. 400
Oklahoma City, OK 73102

s/ Gideon A. Lincecum
Gideon A. Lincecum, OBA No. 19674
John R. (Jack) Bomhoff, OBA No. 32356
Mark D. Myers, OBA No. 34435
**STEPTOE & JOHNSON, PLLC**
Oklahoma Tower, 23rd Floor
210 Park Ave., Ste. 2300
Oklahoma City, Oklahoma 73102
Tele:  (405) 930-5151
Fax:   (405) 212-5843
gideon.lincecum@steptoe-johnson.com
jack.bomhoff@steptoe-johnson.com
mark.myers@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANT EQT CORPORATION**
